UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cr-00188-MOC-1

| | | |
|---|---|---|
| PAUL EDWARD BAALERUD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** is before the Court on consideration of petitioner's pro se Motion to Vacate, Set Aside or Correct Sentence which is filed pursuant to 28 U.S.C. § 2255. For the reasons that follow, petitioner's § 2255 Motion will be denied and dismissed.

**FINDINGS AND CONCLUSIONS**

**I.     BACKGROUND**

On October 7, 2014, petitioner was indicted in this district on two counts of the knowing transmission of child pornography by any means utilizing interstate commerce, including a computer, in violation of 18 U.S.C. § 2252A(a)(1) (Counts One and Two); one count of the knowing receipt of child pornography using any means of interstate commerce, including a computer, in violation of § 2252A(a)(2) (Count Three); and one count of possession with intent to view child pornography that involved prepubescent minors that had not attained the age of twelve, by means of a computer, or other interstate means, in violation of § 2252A(a)(5)(B) (Count Four). Indictment (#1).

1

Petitioner entered into a plea agreement with the Government agreeing to plead guilty to Count Two of his indictment in exchange for the Government's agreement to dismiss the remaining counts. In the agreement petitioner expressly agreed that, among other things, he was in fact guilty of the conduct charged in Count Two and upon conviction he could be subject to a maximum term of lifetime supervised release. Plea Agreement (#31).[1]

On July 20, 2015, petitioner appeared with counsel before U.S. Magistrate Judge David Kessler for his Plea and Rule 11 hearing and he was placed under oath. Petitioner acknowledged that he had reviewed the bill of indictment with his counsel and the elements charged in Count Two, and he acknowledged that he understood the elements of the offense and the potential penalties he faced upon conviction. Petitioner also acknowledged that he had discussed any possible defenses with counsel and he knew he could plead not guilty and contest the charges at trial before a jury, summon witnesses, and cross-examine the government's witnesses. Petitioner then acknowledged that he understood and agreed with the terms of his plea agreement; that he was satisfied with the services of his counsel; and that he was pleading guilty because was in fact guilty of the conduct charged in Count Two. The court recorded petitioner's answers in writing and presented them to petitioner and counsel to review, and they agreed that the answers that petitioner had given under oath were true. The court accepted the guilty plea after finding that it was knowing and voluntary and petitioner's case was then referred to the U.S. Probation Office for preparation of a presentence report (PSR). Acceptance and Entry of Plea (#35).

In the PSR, the probation officer included a detailed summary of petitioner's offense

---

[1] Along with the plea agreement, the government filed a Factual Basis detailing petitioner's offense conduct. Factual Basis (#32).

conduct to support the calculation of the Guidelines Range which included the complete Factual Basis noted above which is set forth as follows:

5. On November 18, 2013, CMPD Det. Chilton was operating an undercover capacity on the Gnutella Internet peer-to-peer network. He identified IP address 108.226.124.222 as sharing files suspected of being child pornography. Det. Chilton was able to download six videos from the suspect IP address. A description of some of these videos is as follows:

    a. (REDACTED TEXT) a video that depicts an adult female performing oral sex on a toddler that is lying nude on her back on a bed.

    b. (REDACTED TEXT) a video that depicts an adult male having vaginal intercourse with a prepubescent female.

6. Det. Chilton initiated an administrative subpoena for the suspect IP address which returned the following subscriber information: Paul Baalerud. 6220 Hackberry Creek Tr., Charlotte NC 28269.

7. Between December 5, 2013 and January 7, 2014, Detective Aleta Dunbar with CMPD was operating in an undercover capacity on the Gnutella internet network Det. Dunbar identified a computer with the IP address 108.226.1 24.222 offering files of investigative interest for download. Det. Dunbar isolated the suspect IP address and downloaded 15 videos of child pornography. Examples of the tiles that she down loaded include:

    a. (REDACTED TEXT) - this video depicts an adult male orally penetrating a prepubescent minor female under the age of 10. The man then attempts to vaginally penetrate her. Next the man attempts to anally rape the child.

    b. (REDACTED TEXT) - this videos depicts an adult male having sexual intercourse with a prepubescent minor female that is approximately 8 to 9 years old. The male ejaculates on the child. Next the man inserts a cylinder object into the child's rectum. He then digitally penetrates the child's anus and rubs his pen is on the child's anus.

8. Det. Dunbar initiated an administrative subpoena to AT&T for subscriber in formation of IP address 108.226.124.222. AT&T responded to the administrative subpoena on December 31, 2013 giving the following subscriber in formation: Paul Baalerud, 6220 Hackberry Creek Tr., Charlotte, NC 28269.

9. *Based on her investigation, Det. Dunbar sought a search warrant for the Hackberry Creek address. This search warrant was executed on January 10, 2014. Numerous items, including a computer and external hard drive were seized. Defendant was the sole resident of the home.*

10. *Defendant agreed to be interviewed. He told the agent that he used a peer to peer program to find child pornography. He stated that he had been using it for about two years. Defendant used search terms like (REDACTED TEXT). He masturbated to child pornography. He told the agents that they would find child pornography on his external hard drive. Defendant indicated that he deleted his collection on an irregular basis. He told the agents that he was not sexually attracted to children but was interested in "the whole idea of control" and "they're [the children] just so innocent."[1]*

11. *Defendant was interviewed later the same day at CMPD. During that interview, he told agents that on five or more occasions, he had masturbated in front of a 2 year old child (Child Victim 1) and had the child touch Defendant's penis. He also told the agent that prior to Child Victim 1, he had two other child victims (CV2 and CV3) climb on top of him while he masturbated. This occurred when CV2 and CV3 were approximately one to two years old.[2]*

12. *A forensic examination was performed on the items seized from Defendant's residence. Peer to Peer software was located on the computer. One image of child pornography was also located on the computer. The external hard drive contained 3 images and 94 videos of child pornography. This included 7 videos that contained sadistic or masochistic content, and 27 videos that included victims under the age or 12.*

13. *The child pornography possessed by Defendant includes victims that have previously been identified. According to the National Center for Missing and Exploited Children, the files included victims from the following series: (REDACTED TEXT).*

PSR (#45).[2]

On December 2, 2015, petitioner appeared for his sentencing hearing and at the outset the Court confirmed with petitioner that the answers he had given under oath before the magistrate judge were true, that he would give those same answers if they were posed again during

---

[2] Petitioner objected to the contents of paragraphs 10 and 11.

sentencing, and his counsel affirmed that he was satisfied petitioner understood the Rule 11 proceedings. Based on these representations, the Court found that petitioner's guilty plea was knowing and voluntary and that he understood the consequences of his plea and his guilty plea was reaffirmed. Next, the government presented the factual basis as contained in the PSR and petitioner stipulated that the Court could rely on the factual basis to support his entry of a guilty plea, except for those facts to which petitioner objected as noted in the PSR. The Court found that based on the stipulations of the parties, the voluntary nature of the plea and the offense conduct, that there was a factual basis for the plea and it was accepted and a verdict of guilty entered in the record.

The government presented testimony from two witnesses who worked as case agents during the investigation and prosecution of petitioner's case: Kevin Kimbrough, a twelve-year veteran of the North Carolina State Bureau of Investigation, and Special Agent John Wydra, a nineteen-year veteran with the Federal Bureau of Investigation. Each of the agents testified that petitioner had failed an initial polygraph examination that contained questions that related, in particular, to petitioner's objection to paragraph 11 of the PSR. That is, whether he actually admitted that on five or more occasions he had masturbated in front of a two-year old child, and had the child touch his penis (Child Victim 1); and whether he admitted that he had two other children climb on top of him while he masturbated (Child Victims 2 and 3). The evidence tended to show that after failing the initial polygraph, petitioner admitted that he had in fact committed the conduct contained in paragraph 11 of the PSR during a second polygraph examination, and further, that the three child victims identified therein were his biological children who were all under the age of five when the offenses were committed. The whole of the testimony, which this

5

Court found credible and reliable, demonstrated that the offenses were committed almost a decade apart from one another.

After sustaining petitioner's objection to a five-level enhancement pursuant to § 2G2.2(b)(5) of the U.S. Sentencing Guidelines (USSG) (2014), the court calculated a Guidelines range of 151-188 months' imprisonment based on a Total Offense Level of 34 and Criminal History Category of I. After hearing from the government, counsel for petitioner and allocution from petitioner, the Court found that a term of 168-months in prison was sufficient after considering the Guidelines and the factors set out in 18 U.S.C. § 3553(a). The Court also found that a lifetime term of supervised release was appropriate given the § 3553(a) factors. The Court then entered judgment, but agreed to allow the government's motion, which was consented to by petitioner's counsel, to defer the determination of the issue of restitution for 90-days following sentencing pending examination of additional evidence from alleged victims. Judgment (#54) at 6).[3]

Ultimately, the parties agreed in a joint motion for restitution to recommend that the Court order petitioner to make restitution to a minor child victim, "Sarah," in the amount of $2,500. Joint Motion for Restitution (#60). The Court noted the stipulation of the parties and found the amount of proposed restitution was reasonable and fair, and therefore entered an Order directing petitioner to pay restitution to Sarah in the amount of $2,500, payable to the United States District Clerk. Order (#61). On April 14, 2016, the Court entered an Amended Judgment and petitioner did not appeal. (#62).

---

[3] The restitution was ordered pursuant to the Mandatory Victims Restitution Act (MVRA) as codified in 18 U.S.C. §§ 2259 and 3663A.

In this collateral proceeding, petitioner raises four claims of ineffective assistance of trial counsel which will be examined herein.

## II. STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. The Court has considered the record in this matter and applicable authority and concludes that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the effective assistance of counsel to assist in his defense. U.S. Const. amend. VI. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial to the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . ." Id. at 689. A petitioner seeking post-conviction relief based on ineffective assistance bears a "heavy burden in overcoming this presumption." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

To demonstrate prejudice in the context of a guilty plea, a petitioner must demonstrate "a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

    A.    Ground One

Petitioner first contends his counsel was ineffective in failing to object to the fact that his Rule 11 hearing was conducted by U.S. Magistrate Judge David Kessler instead of in front an Article III judge. 3:17-cv-00002, Petitioner's Mem. (#1-1) at 5. This argument is without merit.

Petitioner acknowledges the practice of allowing a magistrate to conduct a Rule 11 colloquy is expressly approved in this Circuit; however he contends this Court should revisit the issue in light of a "deep circuit split." Id., at 6 (citing United States v. Harden, 758 F.3d 886 (7th Cir. 2014)). This request must be denied for the simple reason that a district court is bound to apply the prevailing precedent of the circuit in which it presides, and the Fourth Circuit, having not been overruled by the Supreme Court or by statute, approves this plea practice. See United

States v. Benton, 523 F.3d 424 (4th Cir.) (approving magistrate's ability to conduct Rule 11 plea hearings so long as the district court maintains control over the ultimate acceptance of plea and the parties consent), cert. denied, 555 U.S. 998 (2008). See also United States v. Shropshire, 608 F. App'x 143, 144 (4th Cir. 2015) (unpublished) ("Regardless of the Seventh Circuit's contrary decision in Harden, we are bound by Benton.").

Here, as the Court found during sentencing, based on the Rule 11 proceedings conducted by Judge Kessler and petitioner's admissions during sentencing, and his counsel's assurance that petitioner understood the proceedings, that the magistrate judge's finding that the plea was knowing and voluntary should be affirmed. And it is worthy to note that petitioner did not move to withdraw his guilty plea on this basis prior to sentencing nor did he raise any such objection to the magistrate judge's authority during sentencing. Finally, during sentencing petitioner confirmed that he had reviewed the Acceptance and Entry of Plea form and that he agreed the answers he had given before Judge Kessler were true, most notably, his answer that he expressly consented to forego his right to proceed with his plea before the district court and to instead proceed before the magistrate judge. Acceptance and Entry of Guilty Plea (#35) ¶¶ 4-5.

For the reasons stated, this argument is without merit and will be overruled.

B.      Ground Two

Petitioner next argues that his counsel was ineffective by erroneously inducing him to plead guilty to Count 2 and that he is factually innocent.[4] Petitioner's Mem. (#1-1) at 9.

It is well-settled that a petitioner is bound by the sworn statements that he makes during a

---

[4] Petitioner refers to Count One; however he actually pleaded guilty to Count Two and Count One was dismissed at the conclusion of his sentencing hearing.

9

properly conducted Rule 11 hearing and as this Court found during sentencing, and reaffirms herein, Petitioner's Rule 11 hearing was properly conducted therefore his present contention that he was induced into pleading guilty by his counsel must fail. In other words, petitioner swore under oath that no one had induced or coerced him into pleading guilty or promised anything in connection with his guilty plea. See, e.g., Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005).

    C.    Ground Three

Petitioner contends counsel was ineffective in not challenging this Court's imposition of a lifetime term of supervised release. Petitioner's Mem. at 11.

In deciding to impose a term of supervised release, the Court is directed to consider, first, whether to impose a term at all, and second, if a term is imposed, the length of the term. See USSG § 5D1.2 cmt. 4. Because petitioner was convicted of a sex offense involving a minor, the statutory term of supervised release is five years to life. The Guidelines also note that if the instant offense is a sex offense "the statutory maximum term of supervised release is recommended." Id. § 5D1.2(b)(2) ("Policy Statement"). A life term was recommended by the probation officer and the Court agreed after applying the factors in § 3553(a). Sealed PSR Recommendation (#46). See 18 U.S.C. § 3583(c) (noting § 3553(a) factors are to be considered in determine length of supervised release).

In this collateral proceeding, petitioner bears the burden of demonstrating that but for

counsel's failure to object to the lifetime term of supervised release, the outcome would have been different. Petitioner has failed to meet this burden as the Court finds the lifetime term reasonable given the nature of his criminal conduct and after considering the § 3553(a) sentencing factors.

D.     Ground Four

In this final claim, petitioner argues his counsel was ineffective in failing to challenge "the ex post facto imposition of restitution even though no proximate cause existed." Petitioner's Mem. at 13. Petitioner's reliance on the ex post facto clause is misplaced.

The Constitution provides that no "ex post facto Law shall be passed" by Congress. U.S. Const. art. I, § 9, cl. 3. As it pertains to the Sentencing Guidelines, the Court applies the Guidelines in effect at the time of sentencing unless the application of this latter version results in a higher Guidelines range. See Peugh v. United States, 133 S. Ct. 2072, 2078 (2013). See also 18 U.S.C. § 3553(a)(4) and USSG § 1B1.11(a).

The 2014 version of the Guidelines Manual was applied when considering the appropriate sentence in petitioner's case. PSR (#45) ¶ 22. Petitioner was sentenced on December 2, 2015, although his amended judgment ordering restitution was not entered until April 14, 2016. However, this is of no moment as any changes in the Guidelines between the date of his sentencing and the entry of his amended judgment had no impact on the order of restitution.

In any event, petitioner stipulated through counsel that the $2,500 amount of restitution was fair and reasonable, and the Court so found based on a review of the parties' stipulated motion. Finally, to the extent petitioner contends that the order of restitution is illegal, notwithstanding the waiver in his plea agreement, he could have raised this issue on direct appeal

from his amended judgment although he declined to do so. See United States v. Broughton-Jones, 71 F.3d 1143, 1146 (4th Cir. 1995) (noting that illegal order of restitution beyond scope of plea agreement's waiver to contest sentence).

"The Supreme Court has instructed that only those errors presenting a 'fundamental defect which inherently results in a complete miscarriage of justice" are cognizable'" on collateral review. United States v. Foote, 784 F.3d 931, 932 (4th Cir.), cert. denied, 135 S. Ct. 2850 (2015) (quoting Davis v. United States, 417 U.S. 333, 346 (1974)). Moreover, claims that could have been, but were not raised on direct review are procedurally defaulted. See Bousley v. United States, 523 U.S. 614, 621-22 (1998) (habeas review is an extraordinary remedy and will not be allowed to do service for an appeal). Cause and prejudice may excuse such a default, but petitioner has failed to offer any reason he did not pursue this claim on direct appeal.

IV. CONCLUSION

Based on the foregoing, the Court finds that Petitioner's § 2255 motion to vacate is without merit and it will be dismissed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 is **DENIED and DISMISSED WITH PREJUDICE**. (3:17-cv-00002, (# 1)).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk is respectfully directed to close this civil case.

**SO ORDERED**.

Signed: January 30, 2017

Max O. Cogburn Jr
United States District Judge